IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAHTEEK STANFORD,<br><br>              Petitioner,<br><br>     vs.<br><br>THOMAS GRIFFIN, Superintendent,<br>Green Haven Correctional Facility,<br><br>              Respondent. | No. 9:16-cv-01160-JKS<br><br>MEMORANDUM DECISION |

Jahteek Stanford, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Stanford is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Green Haven Correctional Facility. Respondent has answered the Petition, and Stanford has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In March 2011, Stanford was charged with the second-degree murder of Robert Smalls, the second-degree attempted murder of Ahmeen Lanier, and first-degree assault in connection with a fight at an Albany nightclub. During the fight, Smalls was stabbed in the neck, and Lanier was stabbed in the head.

At trial, numerous witnesses testified that Stanford was present at the club and involved in the attack of Smalls and Lanier, and that he stabbed Lanier. No witness, however, testified to seeing Stanford stab Smalls. When officers arrived at the scene, they found a knife located inside the club. Following the testing of that weapon and Smalls' autopsy, it was determined that Stanford could not be excluded as a contributor of DNA on the knife and that it was capable of causing the injuries to

Smalls. The altercation was also caught on videotape, which was admitted at trial and shown for the jury.

Stanford testified in his defense. According to Stanford, he did not enter the club with a knife, though he admitted on cross-examination that he was not checked by security when he re-entered the club after leaving. While he was on the dance floor, Tavious Hooks approached Stanford and asked whether he was "looking at his friends or his brother." Stanford "didn't want any problems," and he and his friends started to walk away. As they were walking away, Stanford heard a commotion and saw a group of men jumping on his friends. When Stanford tried to help his friends, he was continuously hit over the head with a bottle and believed that people were trying to kill him. He reached for what he believed was a bottle on the ground, but picked up a knife. Stanford claimed that, as he got up, he swung the knife at the group in an attempt to scare them. Stanford admitted that the knife he was swinging struck Lanier in the head. Thereafter, Stanford dropped the knife, grabbed his hat, left the city, and went to Staten Island.

After deliberations, the jury found Stanford guilty as charged of second-degree murder, second-degree attempted murder, and first-degree assault. He was subsequently sentenced to an aggregate term of 50 years to life imprisonment.

Through counsel, Stanford appealed his conviction, arguing that: 1) the prosecutor committed misconduct during summation; 2) the county court committed reversible error when it denied Stanford's for cause challenge to prospective juror number four; 3) his convictions for second-degree murder, second-degree attempted murder, and first-degree assault were against the weight of the evidence and not supported by legally sufficient evidence; 4) trial counsel by ineffective for failing to: a) object during the prosecution's summation, b) request a full

circumstantial evidence instruction, and c) adequately communicate with Stanford prior to trial; and 5) his sentence was harsh and excessive. Stanford also submitted a *pro se* supplemental brief in which he argued that he received ineffective assistance of counsel when counsel advised him to testify on his own behalf to assert a justification defense. Stanford averred that counsel did not advise him that the decision to testify was his alone. The Appellate Division of the New York Supreme Court unanimously affirmed the judgment against Stanford in a reasoned opinion issued on July 23, 2015. *People v. Stanford*, 14 N.Y.S.3d 560, 565 (N.Y. App. Div. 2015). Stanford filed a counseled leave application to the New York Court of Appeals, which was summarily denied on November 4, 2015. *People v. Stanford*, 43 N.E.3d 382, 382 (N.Y. 2015).

Proceeding *pro se*, Stanford then moved in the Supreme Court to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that: 1) he was denied his right to his choice of counsel; 2) his attorney had an actual conflict of interest; and 3) counsel was ineffective for: a) abandoning the justification defense during summation and instead arguing extreme emotional disturbance, b) failing to object to the prosecutor's summation, and c) failing to object to the court's circumstantial evidence charge. The county court denied the motion, finding that all claims were barred by CPL § 440.10(2)(c).[1] Stanford filed a leave application, which was summarily denied on May 31, 2017.

While his state post-conviction motion was pending, Stanford timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 15, 2016. Docket No. 1; *see* 28 U.S.C.

---

[1] N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").

§ 2244(d)(1)(A). In response to orders by the Court, Stanford filed a Second Amended Petition ("Petition;" Docket No. 19), which is now before the undersigned judge and ripe for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Stanford argues that: 1) trial counsel was ineffective for: a) proposing a justification defense and placing Stanford on the stand without preparing him, b) failing to object to the prosecutor's summation, and c) failing to object to the circumstantial evidence charge; 2) his attorney had an impermissible conflict of interest; 3) the trial court erred in denying his for challenge cause to a prospective juror; and 4) the evidence presented was legally insufficient to sustain his convictions for murder, attempted murder, and assault.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.     <u>*Ineffective Assistance of Counsel*</u>

Stanford first claims that his trial counsel was ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Stanford must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective

standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

Stanford's ineffective assistance claims must fail, however, even under the more favorable New York standard. Stanford first avers that counsel was ineffective for advising him to take the stand and testify consistently with the theory that the stabbing of Lanier was justified, and for failing to prepare him for that testimony. But as the Appellate Division noted, the evidence, which included surveillance video showing Stanford stab Lanier, was quite strong. It is therefore reasonable to believe that counsel, as a strategic decision, advised Stanford to testify because that was the only way to support a justification defense, which was the only plausible defense in light of the evidence. *See Strickland*, 466 U.S. at 690 (counsel's determination whether to pursue justification defense is a tactical choice that is "virtually unchallengeable"). With respect to his claim that counsel failed to adequately prepare him to testify, Stanford provides nothing more than his conclusory assertion. *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either Strickland prong" (citation omitted)).

Nor can Stanford show that counsel was ineffective for failing to object to the prosecutor's summation. On direct appeal, the Appellate Division rejected the claim, concluding that none of the prosecutor's comments during summation constituted misconduct:

> Insofar as [Stanford] argues that the prosecutor improperly mocked [Stanford's] account of having discovered the knife on the floor after Smalls was stabbed, we find that the prosecutor's remarks in this regard "constituted fair comment on" a central issue in the case. Moreover, although the prosecutor did engage in rhetoric concerning the credibility of a witness whose testimony as to the physical interactions between Smalls and [Stanford] was contradicted by the surveillance footage, the prosecutor neither provided his own personal opinion of this witness' truthfulness nor demanded that the jurors deem this witness credible in light of her cooperation with the People in prosecuting [Stanford].

*Stanford*, 14 N.Y.S.3d at 564-65 (citations omitted).

8

That conclusion is both reasonable and supported by the record. Consequently, Stanford also fails to show on federal habeas review that counsel was ineffective for failing to object to the prosecutor's statements.

Finally, Stanford contends that counsel was ineffective for not objecting to the circumstantial evidence charge. According to Stanford, a full circumstantial charge was warranted in his case. However, a review of the record confirms that the evidence was not solely circumstantial and instead also consisted of direct evidence. As such, a full circumstantial charge was not warranted. *See, e.g.*, *People v. Daddona*, 615 N.E.2d 1014, 1015 (1993) ("Whenever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty."). Counsel thus cannot be faulted for failing to request a full instruction, and Stanford is not entitled to relief on any argument advanced in support of his ineffective assistance of counsel claim.

Ground 2.    *Conflict of Interest*

Stanford similarly argues that counsel had a conflict of interest. According to Stanford, trial counsel tried to force Stanford to plead guilty and when Stanford refused, counsel failed to prepare him for trial.

As an initial matter, review of this claim is barred by the state court's adequate and independent finding of a procedural default in rejecting this claim on state habeas review. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding this claim unpreserved for appellate review, the trial court relied upon CPL § 440.10(2)(c), which requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the

9

constitutional violation on direct appeal despite a sufficient record upon which to base such an appeal. The purpose of the rule set forth in CPL § 440.10(2)(c) "is to prevent CPL 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986) (citations omitted). Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006). Because Stanford has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court. *Sweet*, 353 F.3d at 141.

Moreover, Stanford's claim fails on the merits. "A defendant will have suffered ineffective assistance of counsel in violation of his Sixth Amendment rights if his attorney has a 'per se' conflict, a potential conflict of interest that results in prejudice to the defendant, or an actual conflict of interest that adversely affects the attorney's performance." *Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002). A "per se" conflict exists only where there is an "actual or constructive denial of the assistance of counsel altogether." *Winkler v. Keane*, 7 F.3d 304, 308 (2d Cir. 1993) (citation omitted). "An actual conflict between a lawyer and his client exists when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Armienti*, 313 F.3d at 811 (citation omitted).

10

Finally, a potential conflict of interest exists "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (citation omitted). Importantly, to violate the Sixth Amendment, any such conflict must also result in prejudice to the defendant. *Id.*

Stanford fails to meet any of the three benchmarks that would establish the presence of a conflict of interest, much less has he demonstrated that any conduct he alleges to be a conflict resulted in prejudice to him. He provides nothing more than his assertion that counsel failed to prepare him for trial and, as discussed above, Stanford fails to demonstrate that counsel was ineffective in that regard. Importantly, there is absolutely nothing in the record suggesting that counsel acted to benefit his own interests at the expense of his client. Finally, as discussed above, Stanford fails to demonstrate that counsel's actions (or inactions) caused him prejudice. Accordingly, Stanford is not entitled to relief on this ground either.

Ground 3.      *Denial of For-Cause Challenge*

Stanford next contends that the trial court erred by denying his for-challenge cause to a prospective juror. The record reflects that, after the for-cause challenge was denied, Stanford used a peremptory challenge to remove the juror. He later exhausted his remaining peremptory challenges prior to the end of jury selection. The New York Appellate Division considered and rejected this claim on direct appeal as follows:

> We reject [Stanford's] claim that Supreme Court committed reversible error in denying his challenge for cause as to a prospective juror who had prior dealings with one of the People's witnesses. A challenge for cause as to a prospective juror is properly raised if he or she has a "relationship [with a potential witness] of such [a] nature that it is likely to preclude him [or her] from rendering an impartial verdict" (CPL 270.20[1] [c]). The existence of such an implied bias requires automatic exclusion even if, as here, "the prospective juror declares that the relationship will not affect [his or] her ability to be fair and impartial." "In determining whether a relationship is so close as to require

11

> disqualification, a court should consider factors 'such as the frequency, recency or currency of the contact, whether it was direct contact, . . . [and] the nature of the relationship as personal and/or professional.'" Here, the prospective juror stated that she knew Michael Dailey, a physician who provided peripheral testimony at trial regarding the abortive efforts to treat Smalls after the fatal attack, as her husband had been treated by Dailey and she had previously cared for certain of his patients in her role as a nursing aide. Under these circumstances, and stressing that the prospective juror unequivocally stated that she could be fair and impartial in assessing Dailey's testimony, we do not find that her preexisting ties to Dailey rendered her unqualified to serve.

*Stanford*, 14 N.Y.S.3d at 564 (citations omitted).

Stanford fares no better on habeas review because his claim is not legally cognizable on habeas review. The Supreme Court has expressly stated, "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *cf. United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) ("[I]f the defendant elects to cure [a trial court's erroneous refusal to strike a juror for cause] by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right."); *United States v. Perez*, 387 F.3d 201, 207-08 (2d Cir. 2004) (applying *Martinez-Salazar*).

Stanford does not argue before this Court that the jury before which he was tried in his second trial was not impartial. Nor did he present that argument to the Appellate Division. On direct appeal, Stanford's argument was that under the facts and New York law he was entitled to a reversal of his judgment and conviction without showing that the jury was not impartial. *See* CPL § 270.20(2) (under New York law, an erroneous ruling by the trial court denying a challenge for cause constitutes reversible error if the defendant has exhausted his peremptory challenges at the time, or if the defendant peremptorily challenges the prospective juror and exhausts his peremptory

challenges before jury selection is complete). Whatever the merits of Stanford's arguments under New York law may be, by failing to present any evidence or argument that the jury that convicted him was not impartial, Stanford has failed to present a federal constitutional argument cognizable by this Court in a federal habeas proceeding. Accordingly, Stanford is not entitled to relief on this ground.

Ground 4.    *Insufficiency of the Evidence*

Finally, Stanford argues, as he did on direct appeal, that the evidence was legally insufficient to support the jury's verdict.[2] As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that

---

[2] To the extent that Stanford's *pro se* Petition re-alleges his direct appeal claim that the verdict is against the weight of the evidence, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted).

supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

The Appellate Division rejected this claim as follows:

> [Stanford] argues that the jury's verdict was not supported by legally sufficient evidence and was against the weight of the evidence. Turning first to the conviction of murder in the second degree, a defendant is guilty of this crime when, as is relevant here, he or she causes the death of a person after having acted with intent to cause that person's death (see Penal Law § 125.25[1]). According to the testimony at trial, the stabbings occurred during a birthday party in honor of a female member of the club. [Stanford] went to the club that night with several individuals who had not been invited to the birthday party, but nonetheless gained admittance. At some point during the evening, a verbal dispute occurred between members of [Stanford's] group and several of the invited guests, among them Robert Smalls. At least one witness indicated that [Stanford] and Smalls were the primary

> antagonists during this heated verbal exchange, and that the two had to be separated before a physical fight began. While this proof of a potential motive does not establish an element of the crime, it "cannot be ignored in examining the evidence in the light most favorable to the prosecution."
>
> Surveillance footage of the subsequent physical fight reveals that one of [Stanford's] associates was surrounded by hostile partygoers, including Smalls, when it began. [Stanford] did not have a weapon when he first arrived at the club but, as the melee broke out, he can be seen exiting the club, reentering, and walking toward his compatriot in what he admitted was an attempt to help. By that point in time, the compatriot had separated himself from the large group and retreated to the foyer of the club, where he was followed by Smalls. [Stanford] then came up behind Smalls, who turned around and faced [Stanford]. While the surveillance footage did not directly capture any blows being exchanged, Smalls quickly backed away from the foyer and was soon seen clutching his neck with his left hand. [Stanford] can thereafter be seen moving in the direction of the second victim, Ahmeen Lanier, and stabbing him in the head with a vicious overhand motion. There is no question that the stabbings left Smalls dead and Lanier severely injured.
>
> Viewing the foregoing evidence in the light most favorable to the People, and noting that "the intent to kill may be inferred from the surrounding circumstances and a defendant's actions," we find that the evidence was legally sufficient to support the second-degree murder conviction. The attempted murder and assault convictions are similarly supported by legally sufficient evidence, notably, the videographic evidence showing [Stanford] rising to his feet, walking several yards and deliberately stabbing Lanier in the head. [Stanford] contended that he did not stab Smalls, and advanced a justification defense with regard to his stabbing of Lanier. The jury was free to credit the above evidence despite the presence of proof that could support a different result and, upon our independent review of the evidence, we cannot say that its verdict is against the weight of the evidence.

*Stanford*, 14 N.Y.S.3d at 563-64 (citations omitted).

In support of his claim, Stanford attacks the value of the evidence against him, as he did on direct appeal. However, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). As the

Appellate Division thoroughly explained, the evidence was sufficient to support the second-degree murder, attempted murder, and assault convictions. The Appellate Division's conclusion is both reasonable and supported by the record, which includes the surveillance video and still images from that footage.

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Stanford bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons discussed by the Appellate Division, the record does not compel the conclusion that no rational trier of fact could have found proof that Stanford was guilty of second-degree murder, attempted murder, and assault, , especially considering the double deference owed under *Jackson* and the AEDPA. Stanford therefore cannot prevail on his insufficiency of the evidence claim.

## V. CONCLUSION

Stanford is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

    The Clerk of the Court is to enter judgment accordingly.

    Dated: April 10, 2018.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
